# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBERT BURRIS, individually and on behalf of all others similarly situated,**

Plaintiff,

-vs-

Case No. 09-C-302

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for AMCORE BANK, N.A.,**

Defendant.

## DECISION AND ORDER

This is a class action brought pursuant to the Electronic Funds Transfer Act. On January 25, 2010, the Court granted the parties' joint motion for preliminary approval of their settlement agreement. Pursuant to the settlement agreement, Amcore Bank established a settlement fund by transferring $240,000 to a third-party claims administrator, subject to distribution upon final approval of the settlement. The Court also scheduled a final approval hearing for June 2.

In the interim, the plaintiff attempted to advance the hearing, fearing that Amcore Bank was about to close and be placed into receivership with the Federal Deposit Insurance Corporation. The Court refused to advance the hearing because of the detailed notice requirements in the Class Action Fairness Act. 28 U.S.C. § 1715(d). On April 23, plaintiff's fears were realized when the Office of the Comptroller Currency appointed the FDIC to serve as Amcore Bank's receiver. After substituting FDIC for Amcore Bank as the correct party

in interest, Fed. R. Civ. P. 25(c), the Court granted FDIC's motion to stay so the plaintiff could exhaust his administrative remedies under the Financial Institutions, Reform, Recovery and Enforcement Act ("FIRREA"). The Court also canceled the fairness hearing because it lacked jurisdiction over claims not previously submitted for administrative review. 12 U.S.C. § 1821(d)(13)(D).

On October 14, the FDIC repudiated the instant settlement agreement. FDIC also asked the third-party claims administrator to release the $240,000 settlement fund, but the claims administrator refused. Accordingly, FDIC now moves for an order directing the claims administrator to release the funds to the FDIC as Receiver. In opposition, the plaintiff moves to lift the stay and renews his motion for final approval of the class settlement.

Under FIRREA, the FDIC as Receiver can repudiate contracts executed by the closed institution if the FDIC determines, in its discretion, that performance of the contract would be burdensome and repudiation would "promote the orderly administration of the institution's affairs." 12 U.S.C. § 1821(e). The plaintiff argues that the settlement agreement cannot be repudiated because it is a "nonexecutory contract." "Executory contracts are those under which neither party has performed his or her obligation under the contract. A nonexecutory contract is one under which liability for performance has accrued because one party has performed his or her contractual obligations. Under FIRREA, the FDIC can repudiate executory contracts. It cannot repudiate contracts which the non-bankrupt party has performed." *LaMagna v. F.D.I.C.*, 828 F. Supp. 1, 2 (D.D.C. 1993).

The distinction between executory and nonexecutory contracts was subsequently rejected by the Third Circuit Court of Appeals. The "conclusory holding that § 1821(e) does not permit the receiver to repudiate a 'nonexecutory' contract lacks support in both the statutory language and the case law. As many courts have noted, the statute explicitly provides that a conservator or receiver 'may disaffirm *any* contract or lease,' not just executory contracts." *Hennessy v. F.D.I.C.*, 58 F.3d 908, 919 n.8 (3d Cir. 1995) (citing *Empl. Ret. Sys. of Ala. v. Resolution Trust Corp.*, 840 F. Supp. 972, 984 (S.D.N.Y. 1993)). The distinction between executory and nonexecutory contracts arose in the bankruptcy context, and while there are "definite parallels between the claims handling procedure under FIRREA and the Bankruptcy Code," Congress "deliberately omitted" any reference to executory contracts "in order to avoid disputes over whether a given contract was executory. Congress intended the administrative claims review process to provide a streamlined method for resolving most claims against failed institutions in a prompt, orderly fashion, without lengthy litigation." *Morton v. Arlington Heights Fed. Savings and Loan Ass'n*, 836 F. Supp. 477, 481-82 (N.D. Ill. 1993). Accordingly, under FIRREA, the FDIC's power to repudiate is not limited to executory contracts.[1]

Plaintiff argues that the settlement fund is not properly considered an "asset" of the bank. "The distribution of the assets of an insolvent bank must, of necessity, come 'from what belongs to the bank, and that which at the time of insolvency belongs of right to the

---

[1] The repudiation decision is also insulated from judicial review. "While the statute provides for judicial review of *claims* . . . [it] is silent concerning judicial review of the repudiation decision itself." *Morton*, 836 F. Supp. at 484 (emphasis added).

-3-

debtor does not belong to the bank.'" *Hibernia Nat'l Bank v. F.D.I.C.*, 733 F.2d 1403, 1407 (10th Cir. 1984). Amcore Bank did not forfeit ownership of the settlement fund simply by transferring the money to a third-party. The settlement fund was subject to distribution to the class members only in the event that the Court eventually approved the proposed settlement.[2] Since that never happened due to the FDIC takeover and subsequent repudiation of the settlement agreement, the money remains an asset of the bank, which the FDIC as Receiver may act to "preserve and conserve." § 1821(d)(2)(B)(iv). Therefore, the settlement funds must be released to the FDIC as Receiver.

It is important to note that FIRREA creates a remedy for damages caused by the receiver's repudiation of a contract. § 1821(e)(3) (allowing claims for actual direct compensatory damages). "While it would clearly be unjust (and perhaps unconstitutional) to permit an institution in receivership to walk away from a contract that had been fully performed on the other side, the provision for a damage remedy largely eliminates that concern." *Morton*, 836 F. Supp. at 481. Just like the underlying claims in this lawsuit, such a claim would be subject to the administrative exhaustion requirement. § 1821(d)(3); § 1821(d)(13)(D); *Plymouth Mills, Inc. v. F.D.I.C.*, 876 F. Supp. 439, 440-41 (E.D.N.Y. 1995). In any event, it does not appear that the plaintiff elected to pursue this remedy. The 90-day period for raising such a claim already expired. § 1821(d)(3).

---

[2] The settlement agreement explicitly provides: "If the Court does not execute and enter the Final Approval Order or if the Final Approval Order does not become Final for any reason, this Settlement Agreement shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever . . ." D. 22-1.

The only thing left for the Court to determine is whether to lift the stay. On May 28, the Court stayed this case "for a period of time ending on the earlier of 180 days from the date on which Plaintiff files its claims with the FDIC as Receiver or the date the FDIC as Receiver disallows the claims." D. 42, at 2. 180 days is the time period within which the FDIC as Receiver "shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim." § 1821(d)(5)(A)(I). Plaintiff filed his claim on July 21. The FDIC as Receiver did not take any action on plaintiff's claim within 180 days, and the parties did not agree to an extension. § 1821(d)(5)(A)(ii). Therefore, this matter can now proceed. § 1821(d)(6)(A)(ii) (after expiration of 180-day review period, "claimant may request administrative review of the claim . . . or file suit on such claim (or continue an action commenced before the appointment of the receiver)"); *Office & Prof. Empl. Int'l Union, Local 2 v. F.D.I.C.*, 962 F.2d 63, 65 n.4 (D.C. Cir. 1992) ("If FDIC fails to pass on a claim within the 180-day period, the claimant is similarly entitled to sue in federal district court").

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Plaintiff's motion for final approval of the settlement agreement [D. 48] is **DENIED**;

2. The FDIC as Receiver's motion for an order directing the claims administrator to release the settlement fund [D. 43] is **GRANTED**. The claims administrator, First Class,

-5-

Inc., Chicago, Illinois, is **ORDERED** to return all funds held in connection with this case pursuant to the Class Action Settlement Agreement and Release;

3. Plaintiff's motion for final approval of the Class Action Settlement Agreement and Release [D. 48] is **DENIED**; and

4. The Court will conduct a telephonic status conference call on **March 29, 2011** at **10:00 a.m. (CST)**. The parties should be prepared to discuss how this case should proceed. The Court will initiate the call.

Dated at Milwaukee, Wisconsin, this 3rd day of March, 2011.

**BY THE COURT,**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**